UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
FUNDAMENTAL LONG TERM CARE, INC.,

        Debtor.
_____/

ESTATE OF ARLENE TOWNSEND,
ESTATE OF ELVIRA NUNZIATA,
ESTATE OF JAMES HENRY JONES,
ESTATE OF JOSEPH WEBB,
ESTATE OF OPAL LEE SASSER,
and ESTATE OF JUANITA JACKSON,

        Appellants,

|  |  |  |
|---|---|---|
|  | Case No. | 8:19-cv-2176-T-33 |
| v. | Bankr. No. | 8:11-bk-22258-MGW |

SHUMAKER, LOOP & KENDRICK, LLP,

        Appellee.
_____/

**ORDER**

This cause is before the Court on appeal from the United States Bankruptcy Court for the Middle District of Florida. Appellants, Estate of Arlene Townsend, Estate of Elvira Nunziata, Estate of James Henry Jones, Estate of Joseph Webb, Estate of Opal Lee Sasser, and Estate of Juanita Jackson (the Estates), are probate estates of six deceased nursing-home residents and are creditors of Debtor, Fundamental Long Term Care, Inc. (Fundamental). In the context of Fundamental's Chapter 7 bankruptcy proceeding, the Estates seek review of

the Bankruptcy Court's Order denying the Motion to Disqualify Steven M. Berman, Esquire and Shumaker, Loop & Kendrick, LLP (Shumaker) as Counsel to the Chapter 7 Trustee Nunc Pro Tunc and for Disgorgement of Compensation. (Disqualification Order)[1] (Doc. # 11-52). The appeal is fully briefed,[2] see (Doc. ## 19, 25, 26), and is ripe for review. For the reasons that follow, the Court affirms the Bankruptcy Court's Disqualification Order except to the extent that the Bankruptcy Court found no violation of Rule 2014. The Bankruptcy Court's finding of no violation of Rule 2014 is vacated and the case is remanded back to the Bankruptcy Court for further proceedings consistent with this Order.

I.    **Background**

Prior to 2006, Trans Health Care, Inc. (THI) owned a number of subsidiaries that operated nursing homes throughout the United States. (Doc. # 11-52 at 3). Trans Health Management, Inc. (THMI) provided administrative support for

---

[1] A party may appeal, as of right, to the district court from final "judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a)(1). The parties agree that the Disqualification Order is a final, appealable order.

[2] The Court declines the parties' request for oral argument, see (Doc. # 19 at 12; Doc. # 25 at 9), as the issues have been competently and extensively briefed by both sides and the Court is familiar with the complex procedural and factual history of the case.

the nursing homes. (Id.). Beginning in 2004 and continuing to 2009, the Estates filed a series of wrongful-death actions against THI and THMI. (Id. at 4). The suits collectively resulted in $1 billion in empty-chair judgments against the nursing home network. In re Fundamental Long Term Care, Inc., 873 F.3d 1325, 1329 (11th Cir. 2017). THMI was a wholly owned subsidiary of Fundamental. (Doc. # 11-52 at 4). This Chapter 7 involuntary bankruptcy case followed.

As the Bankruptcy Court found:

> To administer [Fundamental's] estate, the Trustee began investigating and pursuing potential fraudulent transfer, alter ego, and other related claims arising out of an alleged prepetition "bust-out" scheme. According to the Trustee, THI's corporate parent and its primary shareholder had first conspired to allow THI's two primary secured lenders to loot THI and THMI in order to repay approximately $75 million in loans. Then, THMI's assets had been transferred to a number of entities and individuals known as the "Fundamental Entities" for far less than their fair market value. Finally, to complete the alleged bust-out scheme, THMIs remaining shell had been transferred to the Debtor, which was created for the sole purpose of acquiring THMI's liabilities, and THI was permitted to go out of business before being put into a state court receivership.

(Doc. # 11-52 at 4-5) (citation omitted).

To assist in litigation in the bankruptcy case, the Chapter 7 Trustee filed an application for appointment of Steve Berman, Esquire, of the Shumaker law firm, as special

counsel pursuant to 11 U.S.C. § 327(a), which was granted by the Bankruptcy Court, without objection, on June 5, 2012. (Doc. # 9-52). In connection with his application to be appointed special counsel, Berman submitted a declaration of disinterestedness pursuant to Rule 2014. (Doc. # 9-49 at 5-7). Several amendments were made to his disclosures, with the last—the one primarily at issue—being made May 4, 2018. (Doc. # 10-575).

While the Trustee's investigation was underway, the Estates were pursuing nearly identical claims in state court. (Doc. # 11-52 at 5). Ultimately, the actions were consolidated in one proceeding—the Trustee, the creditor Estates, and the targets—in the Bankruptcy Court to resolve any issues of fraudulent transfer, alter ego, and other related claims. (Id.). The initial complaint in the adversary proceeding asserted 22 counts against seventeen defendants. (Id. at 6). The matter was tried over a two-week period in 2014. (Id.). Following the trial, the Bankruptcy Court announced its tentative findings and conclusions and ordered a mediation that resulted in two compromises totaling nearly $20 million. (Id.). The Trustee also brought a separate adversary proceeding against THI through its Receiver, and the claims were settled for $700,000. (Id.). Additionally, other

adversary proceedings resulted in settlements of $1.25 million and $6.5 million. (Id. at 7).

Shumaker's employment as special counsel began in June 2012 and continued until December 2015 when the firm filed a motion to withdraw. At that point, its involvement in litigation on behalf of the Trustee had essentially concluded with a compromise of administrative expenses that included payment to Shumaker of $5,620,148.48. (Id. at 7–8). On December 22, 2015, the Bankruptcy Court granted Shumaker's motion to withdraw as litigation counsel. (Id. at 8).

Two and a half years later, on June 4, 2018, the Estates filed a motion to disqualify Shumaker and to disgorge all past and future compensation to Shumaker. (Doc. # 10-577). The Bankruptcy Court denied the motion in a 28-page opinion on August 21, 2019 (Doc. # 11-52), and this appeal followed.

The issues on appeal are whether Shumaker should have been disqualified and its compensation disgorged (1) for holding interests allegedly adverse to the bankruptcy estate and (2) in failing to disclose certain connections it had to entities involved in the bankruptcy litigation. These are two separate issues, and courts in this Circuit and others have recognized that a professional's obligation to disclose connections is far broader than what is required for

disqualification. <u>In re Gulf Coast Orthopedic Ctr.</u>, 265 B.R. 318, 323 (Bankr. M.D. Fla. 2001) ("Under the Rule the applicant and the professional must disclose all connections, not merely those which rise to the level of conflict."); <u>In re Matco Elecs. Grp., Inc.</u>, 383 B.R. 848, 852 (Bankr. N.D.N.Y. 2008) (explaining that the "level of disclosure outlined in the Rule is mandatory, whether or not that disclosure would unearth a conflict of interest"). Additionally, the Estates raise a due process challenge claiming that the Bankruptcy Court deprived them of due process by denying them a hearing on the motion and the opportunity to conduct discovery.

Section 327(a) of the Bankruptcy Code provides the basic authorization for the retention of professionals by the trustee:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). "Fed. R. Bankr. P. 2014 requires that a professional seeking employment in a bankruptcy case submit a 'verified statement . . . setting forth the person's connections' to the debtor, creditors and any other party in

interest." In re Leslie Fay Companies, Inc., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (quoting Fed. R. Bankr. P. 2014).

## A. **Shumaker's Disclosures**

With the application for his appointment, Berman submitted a declaration of disinterestedness pursuant to Rule 2014 on June 1, 2012. (Doc. # 9-49 at 5–7). The initial Berman declaration included the following representations:

> The [Shumaker] Firm does not have any connection to or any interest materially adverse to the Debtor, any of the Debtor's affiliated businesses, any business or entity which may be considered an insider of the Debtor, the Trustee, the Debtor's creditors, any party in interest, their respective attorneys or accountants, the United States Trustee, or the employees of the Office of the United States Trustee, except as further disclosed herein.
> . . .
> No member of the Firm presently represents or otherwise works for any creditor, general partner, lessor, lessee, party to an executory contract of the Debtor or any of its affiliated entities or businesses, or person otherwise adverse or potentially adverse to the Debtor, on any matter, whether such representation is related or unrelated to the Debtor or the estate.

(Doc. # 9-49 at ¶¶ 5, 12). The only connection disclosed in the initial declaration was that a Shumaker partner is married to an attorney in the employ of the Office of the United States Trustee, but the partner does not practice in the bankruptcy area and was not involved in the case in any way. (Id. at ¶ 6). On March 22, 2013, a supplemental disclosure

identified Shumaker's employment of an outside contract attorney from California. (Doc. # 10-584).

On February 6, 2014, Berman again amended his disclosures, this time to identify Shumaker's relationship with General Electric:

> The [Shumaker] Firm does not have any connection to or any interest materially adverse to the Debtor, any of the Debtor's affiliated businesses, any business or entity which may be considered an insider of the Debtor, including Trans Health Management, Inc. ("THMI"), the Trustee, the Debtor's creditors, any party in interest, their respective attorneys or accountants, the United States Trustee, or the employees of the Office of the United States Trustee, other than a long since concluded prior representation of General Electric Company and General Electric Supply Company on completely unrelated matters.

(Doc. # 9-512 at ¶ 4). Shumaker was permitted to withdraw as litigation counsel on December 23, 2015, and the order permitting withdrawal acknowledged that Shumaker may continue to assist the Trustee. (Doc. # 10-141 at ¶¶ 3-4).

On July 27, 2016, after Shumaker had withdrawn as litigation counsel, but during the time it was still providing assistance to the Trustee, Berman filed a Notice Related to Continued Disinterestedness. (Doc. # 10-199). In the Notice, Berman acknowledges Shumaker's limited continued involvement in the case, per the Bankruptcy Court's order permitting withdrawal, and discloses the employment of Delaney Berman,

Berman's daughter and recent college graduate, as a paralegal with the law firm of Dechert, LLP, who represents Rubin Schron in the appeal of a related adversary proceeding. (Id. at ¶¶ 5-7). Berman states that Shumaker was not involved at all in the appeal and that he believes Delaney Berman's employment with the Dechert firm does not create any potential conflict, but nevertheless Berman filed the Notice in the "interests of full disclosure." (Id. at ¶¶ 6, 7, 9, 10).

Shumaker states that in the fall of 2017 it learned that counsel for the Estates approached the Trustee about an undisclosed potential conflict of interest arising out of Shumaker's long-standing attorney-client relationship with Healthcare REIT, Inc. n/k/a Welltower, Inc. (HCN), a publicly-traded real estate investment trust based in Toledo, Ohio. (Doc. # 25 at 19; Doc. # 10-575 at ¶ 8). In response, Shumaker provided the Trustee with a full explanation of its client relationship with HCN and Shumaker's position that at no time did HCN hold any interest adverse to the bankruptcy estate or its creditors. (Doc. # 10-575 ¶ 38, 48).

Approximately six to eight months later, on May 4, 2018, Berman filed a final "Supplemental Disclosure" in connection with his employment as special counsel to the Trustee. (Doc. # 10-575). Regarding Shumaker's relationship with HCN, Berman

states that Shumaker has represented HCN as outside counsel
for 30 years. (Id. at ¶ 11). At no time was Shumaker aware of
any relationship between HCN and Fundamental or HCN and THMI.
(Id. at ¶ 12). Berman declares the only tangential connection
between HCN and the Estates is HCN's purchase in June 2005 of
real property located in Auburndale, Florida—the location of
the Auburndale Oaks facility in which deceased nursing home
residents, Ms. Townsend and Ms. Jackson, resided for a period
of time. (Id. at ¶ 14). HCN owned the property from June 30,
2005, until December 28, 2012. (Id. at ¶ 15). Ms. Jackson
resided at Auburndale Oaks from late 2002 until spring 2003.
(Id. at ¶ 16). Ms. Townsend resided at Auburndale Oaks from
2001 until 2007. (Id. at ¶ 18). HCN was named as a defendant
in the Townsend litigation. (Id. at ¶ 19). A Shumaker attorney
executed interrogatory responses for HCN as outside general
counsel in the Townsend case. (Id. at ¶¶ 26–27). Shumaker was
not litigation counsel for HCN in that matter, and therefore
when Shumaker ran its conflicts check, it did not find any
client representation adverse to any of Fundamental's
creditors, including the Townsend Estate. (Id. at ¶¶ 20, 29).

In the Disqualification Order, the Bankruptcy Court
found there was no evidence that Shumaker was aware of any
alleged connection between HCN and the Estates or HCN and the

bankruptcy estate before the Estates raised the issue in 2017. (Doc. # 11-52 at 27). Additionally, the Bankruptcy Court found that Shumaker did not deliberately fail to disclose any connection to HCN and this was not a situation in which Shumaker's conflict check system failed. (Id.). The Bankruptcy Court concluded Shumaker did not violate Rule 2014 by omitting its representation of HCN from its initial disclosures. (Id. at 28).

## B.    Shumaker's Connections to HCN, Lyric, and HQM

On appeal, the Estates claim the Bankruptcy Court erred in failing to find Shumaker was not disinterested because of its long-standing general counsel relationship with HCN and the connections to Trustee litigation targets, THI Holdings, THI, and THMI; and because of Shumaker's connections to Lyric Health Care, LLC and Lyric Health Care Holdings III, Inc. (Lyric entities) and Health Quality Management, Inc. (HQM). This Court is not tasked with, and indeed is prohibited from, making those factual findings on appeal, but the Bankruptcy Court specifically addressed each of these relationships in the Disqualification Order. See (Doc. # 11-52 at 13–25). A brief summary of the factual findings is useful:

## 1. **HCN**

Shumaker has generally represented HCN for 30 years in corporate, real estate, and other transactional matters, in the nature of general outside counsel. (Doc. # 11-52/2234 at 14). HCN owned and leased the real property to certain nursing homes involved in the wrongful death actions but was not involved in the operation of the facilities. (Id. at 3, 14). HCN was listed as a defendant in the action brought by the Townsend Estate in 2009. (Id. at 16). Shumaker did not serve as litigation counsel for HCN or have any role in the substantive claims in the Townsend Estate case, but a Shumaker lawyer was involved on a limited basis in his capacity as outside counsel. (Id.). HCN was dismissed with prejudice from that litigation in August 2011, three months prior to the bankruptcy case being filed. (Id. at 15–16). The Estates argued that HCN, as owner of the property, was liable for the nursing home's negligence based on the language of the lease agreement, but the Bankruptcy Court noted the Estates' failure to provide legal support for its position. (Id. at 15).

Regarding HCN's prepetition transactions, the Bankruptcy Court discussed HCN's receipt of the $300,000 security deposit in its capacity as landlord, HCN's unsuccessful

purchase of property from THI in 2008, and Shumaker's preparation of the 2001 "Draft Term Sheet" between HCN and THI for a master lease of nursing homes "in a geographic location to be negotiated." (Doc. # 11-52 at 17–18). The Bankruptcy Court found that both the Trustee and the Estates engaged in extensive discovery to uncover all potential sources of income for the bankruptcy estate and its creditors, and notwithstanding these efforts, HCN was never identified as a potential target. The Bankruptcy Court found nothing in the record that supported that HCN and its involvement in prepetition transactions were somehow overlooked because of any attorney-client relationship with Shumaker. (Id. at 18).

### 2. **Lyric**

The Estates argue that Shumaker has connections with the Lyric entities that affect Shumaker's disinterestedness. HCN leased the Auburndale Oaks property to Lyric after its purchase in 2005. (Id. at 22). Lyric operated the nursing home facility thereafter. (Id.). HCN sold the property in December 2012. (Id.). Lyric was never a client of Shumaker. (Id. at 23). Lyric made small payments to Shumaker during Lyric's lease of the property. (Id. at 22). Berman represented that a search of Shumaker's conflict check system showed that the Lyric entities were only adverse parties in

corporate/real estate transactions involving HCN. (<u>Id.</u> at 23). The Bankruptcy Court concluded that Shumaker did not serve as Lyric's counsel and its representation of HCN, Lyric's landlord, did not create a disqualifying conflict. (<u>Id.</u>).

### 3. <u>HQM</u>

The Estates contend that HQM is an adversary of two of the Estates and that connections between Shumaker and HQM affected its disinterestedness in this case. (<u>Id.</u> at 23–24). HQM operates nursing homes in Florida pursuant to leases with HCN who owns the real estate. (<u>Id.</u> at 24). HQM made payments to Shumaker in 2005 and 2007. (<u>Id.</u>). Shumaker does not represent HQM, and HQM is not Shumaker's client. (<u>Id.</u>). Shumaker contends the payments were made for work performed by Shumaker for HCN, HQM's landlord. (<u>Id.</u>). HQM was named as a defendant in the state court actions brought by the Estates of Nunziata and Webb, but was dismissed from the actions in 2009, two years before the filing of the bankruptcy case. (<u>Id.</u>). The Bankruptcy Court concluded that, based on the record, Shumaker did not serve as HQM's counsel and its representation of HCN, HQM's landlord, did not create a disqualifying conflict. (<u>Id.</u>).

## II. **Standard of Review**

The District Court functions as an appellate court in reviewing decisions of the Bankruptcy Court. In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). "A bankruptcy court's ruling about the employment of counsel is reviewed for abuse of discretion." Forizs & Dogali, P.A. v. Siegel, No. 8:12-CV-253-T-23, 2012 WL 4356266, at *2 (M.D. Fla. Sept. 24, 2012) (Merryday, J.) (citing Blumenthal v. Myers, 426 B.R. 796, 799 (B.A.P. 8th Cir. 2010). This Court reviews the Bankruptcy Court's legal conclusions *de novo* but must accept the Bankruptcy Court's factual findings unless they are clearly erroneous. Rush v. JLJ Inc. (In re JLJ Inc.), 988 F.2d 1112, 1116 (11th Cir. 1993).

The District Court reviews a bankruptcy order pertaining to attorney's fees for abuse of discretion. Matter of U.S. Golf Corp., 639 F.2d 1197 (5th Cir. 1981). Similarly, a bankruptcy court's order on disgorgement and/or sanctions is reviewed for abuse of discretion. In re Stewart, 600 B.R. 425, 431 (B.A.P. 10th Cir. 2019) (citing Jensen v. U.S. Tr. (In re Smitty's Truck Stop, Inc.), 210 B.R. 844, 846 (10th Cir. BAP 1997)). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination or bases an award upon

findings of fact that are clearly erroneous." <u>In re Prince</u>, 40 F.3d 356, 359 (11th Cir. 1994) (internal quotations and citations omitted).

**III. <u>Analysis</u>**

On appeal, the Estates raise multiple alleged errors on the part of the Bankruptcy Court that, they claim, merit reversal. The Estates claim the Bankruptcy Court erred in concluding that Berman and Shumaker were not "disinterested" under Section 327(a). (Doc. # 19 at 50–58). They argue the Bankruptcy Court failed to follow proper procedures by not permitting discovery and a hearing on the contested matter. (<u>Id.</u> at 37–42). The Estates claim the Bankruptcy Court applied the incorrect legal standard in concluding that Shumaker did not violate Rule 2014. (<u>Id.</u> at 42–50). The Court addresses each argument in turn below:

**A.    <u>No error in finding Shumaker did not have a disqualifying interest.</u>**

The Bankruptcy Code requires that a professional retained by the trustee may not "hold or represent an interest adverse to the estate," and that the professional be "disinterested." 11 U.S.C. § 327(a). The Estates argue the Bankruptcy Court erred as a matter of law in finding that Shumaker did not have a disqualifying interest. Specifically,

the Estates contend Shumaker represented adverse interests and was not disinterested because: (1) Shumaker had a long-standing general counsel relationship with HCN who owned some of the nursing homes at issue during a portion of the relevant time; (2) HCN was a named defendant in the Townsend Estate's state court action and Shumaker answered discovery on behalf of HCN in that case; (3) Shumaker drafted a master lease agreement related to one of the subject nursing home properties that included affirmative covenants making HCN "more than a passive real estate investor"; (4) Shumaker had connections to the Trustee litigation targets, THI Holdings, THI and THMI ("THI enterprise"); (5) Shumaker was involved in the March 2006 "bust out" transactions that were investigated as the primary source of fraud and liquidation of THI enterprise's assets; (6) Shumaker had connections to HQM and the Lyric entities; and (7) Shumaker drafted a master operating lease between HCN and THI in May 2001 wherein HCN committed to purchase $750,000,000 in facilities over a three-year period to be leased to THI. (Doc. # 19 at 20-24). In response, Shumaker argues that the Estates' counsel was actively involved in the intensive investigation into purported fraudulent transfers of assets from THMI in the efforts to avoid liability for the Estates' claims.

Notwithstanding, no one identified HCN, Lyric or HQM as potential targets, in part because the claims against these entities had already been dismissed with prejudice by the Estates in the state court actions prior to the filing of the bankruptcy and prior to Shumaker's appointment as counsel. (Doc. # 25 at 14).

The concept of "adverse interests" arises twice in Section 327(a). First, the statute states that counsel may "not hold or represent an interest adverse to the estate;" second, counsel must be a "disinterested person." In relevant part, the term "disinterested" is defined in 11 U.S.C. § 101(14) as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14). Under Section 328(c), "[a] court may deny compensation for services provided by an attorney who holds such an adverse interest." In re West Delta Oil, 432 F.3d 347, 354 (5th Cir. 2005); 11 U.S.C. § 328(c).

"The phrase 'interest materially adverse to the estate' is not defined by the Bankruptcy Code." In re Prince, 40 F.3d at 361. The Eleventh Circuit and other courts, however, have

adopted the meaning set forth in In re Roberts, 46 B.R. 815, 822–23 (Bankr. Utah 1985), rev'd in part on other grounds, 75 B.R. 402 (D. Utah 1987), which defined the phrase as:

> possessing, or serving as an attorney for a person possessing, either an "economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant . . . or . . . a predisposition under the circumstances that render such a bias against the estate."

In re Prince, 40 F.3d at 361 (citation omitted); see also In re New River Dry Dock, Inc., 497 F. App'x 882, 886-87 (11th Cir. 2012). "The determination of an adverse interest must be made 'with an eye to the specific facts of each case.'" In re Am. Int'l Refinery, Inc., 676 F.3d 455, 461–62 (5th Cir. 2012) (quoting West Delta Oil Co., 432 F.3d at 356). The Bankruptcy Court was fully aware of the historical facts and procedure of this lengthy proceeding.[3]

---

[3] Additionally, the timing of the Estates' motion was not lost on the Bankruptcy Court who noted the motion was filed by the Estates' counsel years after Shumaker's withdrawal and after the Estates' unsuccessful challenge to the Trustee's compromise of a proceeding against Troutman, Sanders. (Doc. # 11-52 at 10). Generally, "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." Cox v. Am. Cast Iron Pipe Co., 847 F.2d 725, 729 (11th Cir. 1988) (quoting Jackson v. J.C. Penney Co., 521 F. Supp. 1032, 1034–35 (N.D. Ga. 1981)). The Eleventh Circuit criticizes the use of such motions for tactical purposes. See Id. ("[A] litigant may not delay filing a motion to disqualify in order to use the motion

Based on the record, the Bankruptcy Court concluded Shumaker was disinterested under Section 327(a) and did not hold or represent any interests adverse to the bankruptcy estate or its creditors.

Regarding Lyric and HQM, the Estates rely on exhibits showing payments (or credit) for legal services by Shumaker.[4] Shumaker contends the legal work performed was for the benefit of HCN as the landlord of Lyric and HQM. The Bankruptcy Judge had the benefit of the documents in considering the motion to disqualify and certainly possesses a greater understanding of the relationships among the parties and related entities from overseeing the case for years. Additionally, the Bankruptcy Court observed these entities were not a target in the bankruptcy case despite the Estates' knowledge of them, and to the extent named as defendants in the State court actions, they were dismissed with prejudice by the Estates before the bankruptcy case was ever filed. Thus, the Court concludes that the Bankruptcy Judge did not err in determining that

---

later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed.").

[4] A review of the documents cited reveals payments of $113 (Doc. # 10-587 at 51), $1452 (Doc. # 10-588 at 24), $3581 (Doc. # 10-590 at 20), $30,408 (Doc. # 10-591 at 35), $447 (Doc. # 10-592 at 29), and a credit of $2685 (Doc. # 10-589 at 54).

Shumaker's connections with the Lyric entities or HQM did not create a disqualifying conflict of interest in the bankruptcy case.

In analyzing whether HCN is adverse to the bankruptcy estate or the creditors, the Bankruptcy Court distilled the focus of the case's complex history as follows:

> [T]he focus of the bankruptcy case has been the pursuit of numerous claims that arose out of the alleged "bust-out" scheme that occurred in March 2006. Generally, the alleged scheme involved the removal of assets from THI and THMI, which had directly or indirectly owned and operated nursing homes throughout the country, and the transfer of THMI's liabilities to the Debtor. In the bankruptcy case, the Trustee sought to recover from the scheme's participants based on fraudulent transfer, breach of fiduciary duty, successor liability, alter-ego liability, and a number of other related theories.

(Doc. # 11-52 at 17). The Bankruptcy Court discussed in detail the well-documented efforts of the Trustee and the Estates to locate any and all potential sources of recovery for the bankruptcy estate. See (Id. at 18).

The Estates claimed that HCN had prepetition connections to THI that were purportedly not investigated in the bankruptcy case because of HCN's attorney-client relationship with Shumaker. (Id. at 21). However, the record refutes this. The Bankruptcy Court recounted the three years of intense pretrial discovery activity, noting that "[d]espite scores of

21

hours of deposition testimony and thousands of exhibits developed through a joint discovery effort," neither the Estates nor the Trustee ever considered HCN as potentially liable to the bankruptcy estate because of any prepetition transactions. (Id. at 20). After review of the parties' filings and given the Bankruptcy Court's extensive knowledge of the background of the case, the Bankruptcy Court found that the factual record refutes the Estates' suggestion that a viable claim existed against HCN but was somehow overlooked or not diligently pursued due to HCN's attorney-client relationship with Shumaker. (Id. at 18).

Regarding Shumaker's involvement in the Townsend Estate litigation, the Bankruptcy Court observed HCN had been dismissed with prejudice from that case by August 2011, more than three months before the bankruptcy petition was filed. Under Section 327(a), a review of interests adverse to the bankruptcy estate considers present interests. See In re Persaud, 496 B.R. 667 (E.D.N.Y. 2013) (citing 11 U.S.C. § 327(a)) (disqualification not warranted for representation of a past interest adverse to the estate); In re JMK Constr. Grp., Ltd., 441 B.R. 222, 229 (Bankr. S.D.N.Y. 2010) ("[C]ourts only examine present interests when determining whether a party has an adverse interest."). The Estates argue

that, as the landlord, HCN was liable to the residents for
the alleged negligence of the nursing home operators, but the
Estates failed to provide the Bankruptcy Court with legal
authority to support their position. And case law in other
jurisdictions has specifically rejected this premise. See,
e.g., Price v. TLC Health Care, Inc., 85 P.3d 838 (Okla. 2004)
(lessor of nursing home who had no control over the agents
who delivered medical care was not liable for negligent or
substandard care provided to nursing home residents).

The Bankruptcy Court's finding that, as of the date
Shumaker sought employment, HCN was not adverse to the
Townsend Estate or the bankruptcy estate was not clearly
erroneous. Therefore, the Bankruptcy Court did not err in
finding Shumaker's representation of HCN in the Townsend
Estate was not a disqualifying interest.

The Estates argue that Shumaker's long-term
representation of HCN and Shumaker's connections to Lyric and
HQM constituted representation of adverse interests, thereby
making Berman and Shumaker not disinterested. (Doc. # 19 at
50). However, the facts argued by the Estates here are the
same as those presented to the Bankruptcy Court below. Based
on the Bankruptcy Court's review and analysis of the record,
it concluded that Shumaker's representation of HCN did not

lessen the value of the bankruptcy estate, create a potential dispute between the bankruptcy estate and HCN, or create a circumstance that would generate a bias against the bankruptcy estate. (Doc. # 11-52 at 22). The Bankruptcy Court also found that Lyric and HQM were not clients of Shumaker and Shumaker's representation of HCN, as landlord of HQM and Lyric, did not otherwise create a disqualifying conflict of interest considering the totality of the circumstances. (Id. at 23, 25). The Bankruptcy Court based its ruling on findings of fact that were not clearly erroneous and did not err in reaching the conclusion that Shumaker did not possess a disqualifying interest under Section 327(a).

### B.  **Bankruptcy Court followed proper procedures**

#### 1.  **Hearing**

The Estates contend the Bankruptcy Court erred in failing to conduct a hearing on their motion to disqualify. Specifically, the Estates argue Bankruptcy Rule of Procedure 9014(d)[5] mandates the court hold a hearing to take testimony of witnesses in every contested matter. The Estates' reading of the rule is too narrow and ignores section (a) of the rule.

---

[5] Rule 9014(d) states that "[t]estimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding."

Under the plain language of section (a), "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded *the party against whom relief is sought*." Fed. R. Bankr. P. 9014(a) (emphasis added). Here, the party against whom relief is sought was Shumaker, not the Estates.

A district court reviews for abuse of discretion a bankruptcy court's decision not to conduct an evidentiary hearing. Deutsche Bank Nat'l Tr. Co. v. Jackson, Case No. 9:15-cv-81506-RLR, 2016 WL 5390594, at *6 (S.D. Fla. Sept. 27, 2016) (citation omitted). The Court finds the Bankruptcy Court did not abuse its discretion in not conducting a hearing on the motion to disqualify. "The U.S. Bankruptcy Code defines the phrase 'after notice and a hearing' and similar phrases as requiring such notice and hearings as are appropriate under the particular circumstances. 11 U.S.C. § 102(1)(A). These terms permit flexibility regarding the occasions in which a full hearing is required, while insuring that all persons who should have notice receive it." Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV, 347 F.3d 589, 594 (5th Cir. 2003) (citing Collier on Bankruptcy, (15th ed.) ¶ 102.02).

A formal evidentiary hearing was not warranted under the circumstances of this case. The Estates submitted a 37-page motion accompanied by 34 exhibits. (Doc. ## 10-578–10-612). Shumaker filed a lengthy response, (Doc. # 10-629; Doc. # 10-630), along with nineteen exhibits (Doc. ## 10-631–10-650). Additionally, the Bankruptcy Judge is intimately familiar with the factual and procedural history of the case and the various entities involved. Although the motion had initially been scheduled for hearing, where the record provided ample evidence on which the court could make its decision, the Bankruptcy Court did not abuse its discretion in reaching a decision without holding a hearing. See In re Garcia, 532 B.R. 173, 182 (B.A.P. 1st Cir. 2015) (question is not whether reviewing court would have opted to convene a testimonial hearing, but whether the trial court abused its discretion in not doing so). "The parties are entitled to an opportunity to be heard, not to a particular type of hearing." In re Bartle, 560 F.3d 724, 729 (7th Cir. 2009) (holding that a hearing is not necessary "even if an interested party does demand a hearing, when the parties have otherwise placed the relevant facts before the court, or the court by virtue of having presided over the case is already familiar with those facts").

No abuse of discretion occurred here when the Bankruptcy Court ruled on the motion to disqualify without a formal hearing.

### 2.  **Discovery**

Similarly, there was no error in the Bankruptcy Court's decisions regarding discovery. The Estates argue they never received responses to their requests for production directed to Shumaker because the Bankruptcy Court stayed discovery during the court's consideration and ruling on the motion for recusal. Because the stay effectively denied the discovery, the Estates contend they were not able to inquire regarding Shumaker's connections. As a preliminary matter, the Court observes that the stay of discovery was agreed to by all parties. <u>See</u> (Doc. # 1131 at 4).

Federal Rule of Civil Procedure 26(b)(1) which starts with the phrase, "[u]nless otherwise limited by court order," allows the court discretion to limit discovery. And Bankruptcy Rule 9014(c) contains a similar caveat that applies only in bankruptcy "contested matters." <u>In re Tollefson</u>, No. BR 13-24681 TBM, 2015 WL 3897533, at *8 (Bankr. D. Colo. May 13, 2015). Questions regarding the scope of or opportunity for discovery are reviewed for abuse of discretion. <u>In re Piper Aircraft Corp.</u>, 362 F.3d 736, 738 (11th Cir. 2004). Given the lengthy history and record in the

case, the Bankruptcy Court's familiarity with same, and the extensive briefing on the issue of disqualification, the Bankruptcy Court was well within its discretion to limit discovery.[6]

### 3. <u>Findings of Fact and Conclusions of Law</u>

The Estates additionally argue error in the Bankruptcy Court's failure to set forth specific findings of fact and conclusions of law in the Disqualification Order. (Doc. # 19 at 40). "Bankruptcy Rule 9014 grants bankruptcy courts discretion in a contested matter . . . to disregard B.R. 7052, which requires detailed findings of fact and separate conclusions of law in litigated adversary proceedings[,]" particularly where, as here, "it is possible to determine the bases upon which the court below acted." <u>Deutsche Bank Nat'l Tr. Co.</u>, 2016 WL 5390594, at *5 (S.D. Fla. Sept. 27, 2016) (bankruptcy court did not abuse its discretion in failing to detail findings of fact and separate conclusions of law). While the Court concludes there was no abuse of discretion in failing to detail separate factual findings and conclusions

---

[6] Given the Court's conclusion below that remand is warranted for additional factual findings on the issue of whether Shumaker was negligent and/or inadvertent in making its Rule 2014 disclosures, the Bankruptcy Court may, in its discretion, choose to permit limited discovery on the issue and/or conduct a hearing to the extent warranted.

of law, the matter is nevertheless due to be remanded for additional factual findings as explained below.

### C.  <u>Disclosures under Rule 2014</u>

Federal Rule of Bankruptcy Procedure 2014 requires any professional applying for employment to set forth in "a verified statement . . . the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a). The disclosure requirements of Rule 2014(a) are broader than the rules governing disqualification, and an applicant must disclose all connections regardless of whether they give rise to a disqualifying interest under Section 327(a). <u>In re Gulf Coast Orthopedic Ctr.</u>, 265 B.R. at 323 ("Under the Rule the applicant and the professional must disclose all connections, not merely those which rise to the level of conflict.").

The Bankruptcy Court found no Rule 2014 violation in Shumaker's omission of its representation of HCN in its initial disclosures. (Doc. # 11-52 at 28). This conclusion was based on the Bankruptcy Court's finding there was no evidence that Shumaker was aware of any alleged connection between HCN and the Estates or between HCN and the bankruptcy

29

estate. (Id. at 27). Additionally, the Bankruptcy Court concluded this was not a situation in which Shumaker knew of the alleged connections and deliberately chose not to disclose them or that Shumaker's conflict system was wholly inadequate. (Id.).

The Estates contend the Bankruptcy Court erred as a matter of law in failing to find a violation because they argue that a purported lack of awareness by Shumaker does not otherwise excuse an inadvertent or negligent failure to disclose. (Doc. # 19 at 47). Additionally, the Estates argue the facts refute a finding that no disclosure was required. Specifically, the Estates cite to HCN's status as a defendant in the Townsend litigation, HCN's ownership of the nursing homes, and Shumaker's involvement in preparing the master lease agreement to argue the falsity of Berman's initial disclosures denying the existence of any materially adverse interest. (Id. at 48). The Estates also argue the Bankruptcy Court should have found a violation in Shumaker's failure to disclose connections to Lyric and HQM, although the Estates note the Disqualification Order does not directly address the disclosure issue as it pertains to those entities. (Id. at 49). In response, Shumaker reiterates its position that it had no known connections to parties in interest. (Doc. # 25

at 43). It further argues that any purported connection did not have any effect on Shumaker's judgment in the case. (<u>Id.</u> at 44).

As a preliminary matter, Shumaker's argument that there can be no disclosure violation because any purported connection did not affect its judgment is without merit. It is the court's, not the professional's, role to determine the import of any potential conflict. <u>See</u> <u>Keller Fin. Servs. of Fla., Inc.</u>, 243 B.R. 806, 812 (Bankr. M.D. Fla. 1999) ("The professional must disclose all facts that bear on his disinterestedness and cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness and which do not."); <u>see</u> <u>also</u> <u>Miller Buckfire & Co., LLC v. Citation Corp. (In re Citation Corp.)</u>, 493 F.3d 1313, 1321 (11th Cir. 2007) ("The bankruptcy court, not the professionals, must determine which prior connections rise to the level of an actual conflict or pose the threat of a potential conflict. Therefore, the professional must disclose all of its previous contacts with any party in interest.").

Rule 2014 requires a "professional to disclose all of its relevant connections in its disclosure so that the bankruptcy court can determine if there are any conflicts or

potential conflicts." In re Citation Corp., 493 F.3d at 1321. The duty of a professional to disclose connections under Rule 2014 is a mandatory requirement, and the scope of the disclosure is far broader than what is required for disqualification. In re Gulf Coast Orthopedic Ctr., 265 B.R. at 323.

Shumaker represents that it was unaware of any connections between its client HCN and the bankruptcy estate, its creditors, or interested parties. The Bankruptcy Court found that this failure to disclose the HCN connection was not an intentional, deliberate decision and cited to facts in the record to support this conclusion, including Shumaker's representation of HCN in transactional matters only, HCN not being the operator of the nursing homes, and Shumaker being unaware of the connection until raised by the Estates' counsel. See (Doc. # 11-52 at 26-27). It is not this Court's role to make factual findings or draw inferences from the facts. See In re Cornelison, 901 F.2d 1073, 1075 (11th Cir. 1990) (district court which functions in an appellate capacity in a bankruptcy appeal may not make independent factual findings). The Bankruptcy Court, as fact-finder, did not err in concluding there was no knowing violation of Rule 2014 by Shumaker, and this Court cannot say that the

Bankruptcy Court's factual findings in this regard were clearly erroneous.

Unfortunately, it is unclear from the Disqualification Order whether the Bankruptcy Court considered a negligent or inadvertent nondisclosure after the initial disclosure was made. Courts in this Circuit and others have traditionally recognized that an "[i]nadvertent, unintentional or negligent failure to disclose does not vitiate the violation of the Rule." In Re Gulf Coast Orthopedic, 265 B.R. at 323; see also In re Prince, 40 F.3d at 361 (11th Cir. 1994) (whether counsel inadvertently or intentionally neglected to inform the court of its conflicts is of no import); Matter of Hutch Holdings, Inc., 532 B.R. 866, 882 (Bankr. S.D. Ga. 2015) (fact that some of the information that the law firm failed to disclose in its attorneys' affidavits could have been found in other filings did not excuse its failure to fully disclose); In re Jennings, 199 F. App'x 845, 848 (11th Cir. 2006) ("Bankruptcy courts are not obliged to hunt around and ferret through thousands of pages in search of the basic disclosures required by Rule 2014."); Halbert v. Yousif, 225 B.R. 336, 346 (E.D. Mich. 1998) (negligence regarding disclosure is no excuse); In re EWC, Inc., 138 B.R. 276, 280, 281 (Bankr. W.D. Okla. 1992) (negligence in disclosure is no excuse). Additionally,

full disclosure under Bankruptcy Rule 2014 is a continuing responsibility throughout the term of employment. See In re Citation Corp., 493 F.3d at 1321 (citation omitted). "Absent the spontaneous, timely and complete disclosure required by [S]ection 327(a) and Fed. R. Bankr. P. 2014(a), court-appointed counsel proceed at their own risk." Rome v. Braunstein, 19 F.3d 54, 59 (1st Cir. 1994) (citation and emphasis omitted).

As stated above, the Disqualification Order found evidence that there was no intentional, knowing failure to disclose by Shumaker of a potential conflict between HCN and the Estates or HCN and the bankruptcy estate prior to the Estates' counsel bringing it to Berman's attention in 2017. As it relates to an unintentional, inadvertent or negligent nondisclosure by Shumaker, the Disqualification Order is ambiguous. While the Bankruptcy Court found no wholesale breakdown in Shumaker's conflict check system as it relates to HCN being named a defendant in the Townsend litigation, see (Doc. # 11-52 at 26-27), the Disqualification Order is otherwise silent as to whether the Bankruptcy Court analyzed—under a negligence lens—Shumaker's failure to identify and disclose potential connections between its 30-year, long-term client and the bankruptcy estate, its creditors, and other

parties of interest after the initial disclosures were made. Additionally, the Disqualification Order is silent as to the nondisclosure of connections to Lyric or HQM.[7] "If the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings." In re JLJ Inc., 988 F.2d 1112, 1116 (11th Cir. 1993) (citing In re Cornelison, 901 F.2d 1073, 1075 (11th Cir. 1990) and In re Sublett, 895 F.2d 1381, 1384 (11th Cir. 1990)).

Accordingly, the Bankruptcy Court's ruling that there was no Rule 2014 disclosure violation is vacated, and the matter is remanded to the Bankruptcy Court to determine, in the first instance, if there was an unintentional, negligent and/or inadvertent nondisclosure by Shumaker. Additionally, the court should address Shumaker's nondisclosure of Lyric and HQM. On remand, if the Bankruptcy Court determines a Rule 2014 violation occurred, the court should then determine whether and what type of sanction is warranted.[8] This order

---

[7] The Disqualification Order correctly points out that Rule 2014's disclosure requirements compel an attorney to disclose all relevant connections that are not *de minimus*, (Doc. # 11-52 at 26), but otherwise the order makes no specific findings as it relates to the nondisclosure of connections to Lyric and HQM.

[8] In determining whether to assess a penalty and the amount, courts in this Circuit have considered the following factors:

reaches no conclusion as to whether there has been a violation or whether any sanction is warranted if a violation is found. See In re Citation Corp., 493 F.3d at 1321–22 ("Neither Rule 2014 nor the Bankruptcy Code mandates a sanction for the violation of Rule 2014. In such situations, whether to impose a penalty and the nature and extent of the penalty is generally a matter left to the bankruptcy court's discretion").

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

The Bankruptcy Court's August 21, 2019, Order denying the Motion to Disqualify Steven M. Berman, Esquire and Shumaker, Loop & Kendrick, LLP as Counsel to the Chapter 7 Trustee *Nunc Pro Tunc* and for Disgorgement of Compensation (Doc. # 2153) is **AFFIRMED** in all respects except to the extent the Bankruptcy Court found no violation of the disclosure requirements of Rule 2014. The Bankruptcy Court's ruling in the Disqualification Order that there was no Rule 2014

---

"(1) Whether the connections at issue would have created a disqualifying interest under [S]ection 327(a); (2) whether the failure to disclose was inadvertent or intentional; (3) the materiality of the information omitted; (4) counsel's efforts to correct the deficiency; and (5) the benefits provided to the estate by counsel." Matter of Hutch Holdings, Inc., 532 B.R. at 881 (Bankr. S.D. Ga. 2015) (citations and internal quotations marks omitted).

disclosure violation is **VACATED**, and the matter is **REMANDED** to the Bankruptcy Court to determine, in the first instance, if there was an unintentional, negligent and/or inadvertent nondisclosure by Shumaker. The Clerk is directed to transmit a copy of this Order to the Bankruptcy Court and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of February, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE